**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4574-15T2

LUIS FONSECA,

    Petitioner-Appellant/
    Cross-Respondent,

v.

INTERTEK,

    Respondent-Respondent.

_____

ALLSTATE INSURANCE CO., A/S/O
LUIS FONSECA,

    Petitioner-Respondent/
    Cross-Appellant,

v.

INTERTEK,

    Respondent.

_____

        Submitted May 17, 2017 — Decided June 20, 2017

        Before Judges Carroll and Farrington.

        On appeal from the New Jersey Department of
        Labor and Workforce Development, Division of
        Workers' Compensation, Claim Petition Nos.
        2011-32820 and 2013-26473.

Kuchinsky and Rotunno, P.C., attorneys for appellant/cross-respondent (Anthony M. Rotunno, on the brief).

Biancamano & DiStefano, attorneys for respondent Intertek (James G. Serritella, on the brief).

McDermott & McGee, LLP, attorneys for respondent/cross-appellant Allstate Insurance Co. (Antony J. Verardi, on the brief).

PER CURIAM

Petitioner Luis Fonseca appeals the May 16, 2016 order of the Division of Workers' Compensation that dismissed with prejudice his claim petition against respondent Intertek, his employer. A companion order dismissed a related claim petition filed by cross-appellant, Allstate Insurance Company, which sought to recover personal injury protection benefits it paid to Fonseca under an automobile insurance policy. The Judge of Compensation (JWC) determined that Fonseca's injuries did not arise out of or in the course of his employment, and hence were not compensable. We affirm.

Fonseca was employed by Intertek as a petroleum inspector. He was injured in an automobile accident that occurred on September 24, 2011. He alleged that he took petroleum samples from a job site, Hess Port Reading Terminal (Hess), to Intertek's laboratory for analysis, and that the accident occurred while he was returning to Hess to complete his job duties. Intertek disagreed, and

instead maintained that Fonseca had concluded his work and was leaving for the night and not returning to Hess as he had no reason to do so.

The case was tried, as to compensability only, over four days between July 13, 2015 and February 8, 2016. Fonseca, his former co-worker Juan Garabito, and Edward Lauer, a dispatcher employed by Intertek, testified at the hearing. In a thorough oral opinion, the JWC found Fonseca's testimony that he was working at the time of the motor vehicle accident was not credible because of inconsistencies in his testimony at the hearing and in his pre-hearing explanation of the accident. In reviewing the testimony, the JWC identified certain instances when Fonseca was "argumentative and defensive" and "evasive." The JWC likewise "[did] not believe Garabito's testimony" and found it was contradicted by information contained in a Movement Summary Report introduced at trial that tracked Fonseca's activities.

The JWC found Lauer's testimony "more credible." The JWC accepted Lauer's version of events, which she summarized as follows:

> I found [Lauer] to be a credible witness; straightforward and businesslike. He testified that before [Fonseca] left [Intertek's] premises after dropping off the samples, he did not tell him that he was returning to Hess. He said that if [Fonseca] was returning to Hess, he would have told him.

> After leaving [Intertek's] premises, [Fonseca] called Lauer to tell him he was involved in an accident around the corner from [Intertek's] premises and Lauer picked him up and brought him back to [Intertek's] premises where he was picked up and taken home by a friend. Lauer testified that even when he picked up [Fonseca] at the scene, he did not tell him that he was on his way back to Hess, or that any further work had to be done that night. Lauer further testified that if there was anything that had to be done to complete the work that night, that he would have been contacted by someone from Hess. He said he was not contacted. He said there was no need for anyone to go back to Hess until the following morning at 8 a.m. when the barge was closed.

Based on the facts as she found them, the JWC determined that petitioner's accident was not compensable because Fonseca's work had concluded for the night and he was not returning to Hess. The JWC also dismissed Allstate's claim petition "as there [was] no reimbursement due." Fonseca's appeal and Allstate's cross-appeal followed.

Our standard of review is well settled. As delineated by our Supreme Court:

> In workers' compensation cases, the scope of appellate review is limited to "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility."

> [Lindquist v. City of Jersey City Fire Dep't,
> 175 N.J. 244, 262 (2003) (quoting Close v.
> Kordulak Bros., 44 N.J. 589, 599 (1965)).]

"Deference must be accorded the factual findings and legal determinations made by the Judge of Compensation unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 262-63 (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994), certif. denied, 104 N.J. 277 (1995)). "[T]he judge of compensation's legal findings are not entitled to any deference and, thus, are reviewed de novo." Hersh v. Cty. of Morris, 217 N.J. 236, 243 (2014) (citing Williams v. A & L Packing & Storage, 314 N.J. Super. 460, 464 (App. Div. 1998)).

Only those employees injured in accidents "arising out of and in the course of employment" are entitled to workers' compensation benefits. Ibid. (quoting N.J.S.A. 34:15-7). N.J.S.A. 34:15-36 provides in pertinent part:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the

5

> direct performance of duties assigned or
> directed by the employer[.]
>
> [Ibid.]

Prior to 1979, the workers' compensation law had "broad statutory language defining compensable accidents as those arising out of and in the course of [the] employment." Watson v. Nassau Inn, 74 N.J. 155, 158 (1977). The workers' compensation jurisprudence at the time included the "going and coming rule," a doctrine that prevented awarding workers' compensation benefits for accidental injuries that occurred during routine travel to or from the employee's place of work. Ibid. The purpose of the rule was to separate work risks from ordinary risks unrelated to employment. Id. at 159.

"However, there were many exceptions to the [going and coming] rule, allowing for countless awards of workers' compensation benefits[.]" Hersh, supra, 217 N.J. at 243. "As a result, in 1979, the Legislature amended the Workers' Compensation Act, updating the definition of 'employment' [in N.J.S.A. 34:15-36] to be more restrictive." Id. at 244; see also Jumpp v. City of Ventnor, 177 N.J. 470, 476-79 (2003) (tracing jurisprudential developments leading to 1979 adoption of Section 36).

Before us, Fonseca and Allstate (collectively, appellants) do not challenge the JWC's credibility findings. Rather, they

argue that the JWC failed to address the "on call" nature of Fonseca's employment in determining the compensability of his injuries.  We are unpersuaded.

Appellants cite a trilogy of pre-amendment cases, <u>Paige v. City of Rahway, Water Department</u>, 74 <u>N.J.</u> 177 (1977), <u>Briggs v. Am. Biltrite</u>, 74 <u>N.J.</u> 185 (1977), and <u>Sabat v. Fedders Corp.</u>, 75 <u>N.J.</u> 444 (1978), for the broad proposition that being "on-call" means his injuries are compensable.  However, the 1979 amendment intended to limit compensation to accidents occurring "when the employee is engaged in the direct performance of duties assigned or directed by the employer[.]"  <u>N.J.S.A.</u> 34:15-36.  Moreover, to the extent that the cases relied on by appellants have continued vitality after the 1979 amendment, Fonseca's limited testimony on redirect examination, that when he goes home he is "on call," does not, "without more, establish entitlement to compensation as a result of an accident."  <u>Sabat</u>, <u>supra</u>, 75 <u>N.J.</u> at 451.  Rather, compensability in the pre-amendment context generally required a "showing of frequent and substantial disruption of the off-duty life of an employee whose continued availability is essential to the operational efficiency of his employer's business[.]"  <u>Ibid.</u> Fonseca made no such showing here.

Further, we agree with Intertek that Fonseca never specifically asserted the "on call" argument before the JWC.

Rather, Fonseca's contention was that he was returning to the Hess work site, rather than going home, when the accident occurred. Generally, we "'will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available' unless the matter involves the trial court's jurisdiction or is of public importance[.]" Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 643 (1997) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); accord State v. Robinson, 200 N.J. 1, 20 (2009) (reiterating the principle of not considering an issue raised for the first time on appeal absent an exception). No exception applies here.

Finally, Fonseca argues that the JWC erred in failing to admit the collective bargaining agreement that purportedly detailed the "on call" nature of his employment. The JWC excluded the document because it was an unsigned copy and referenced an individual other than Fonseca and, as such, it was not properly authenticated.

We give substantial deference to the trial judge's discretion on evidentiary rulings, Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999), certif. denied, 163 N.J. 79 (2000), and reverse only where the judge's ruling was "so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91

N.J. 86, 106 (1982).  Guided by this standard, we discern no abuse of discretion that warrants reversal here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION